IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PACE INDUSTRY UNION-<br>MANAGEMENT PENSION FUND,<br><br>and<br><br>BOARD OF TRUSTEES OF THE PACE<br>INDUSTRY UNION-MANAGEMENT<br>PENSION FUND,<br><br>       Plaintiffs,<br><br>vs.<br><br>O.E. CLARK PAPER BOX CO.,<br><br>       Defendant. | CASE NO. 3:15-0163<br>JUDGE CAMPBELL/KNOWLES |

## REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant's "Motion to Compel Arbitration and to Dismiss, or In The Alternative Stay Plaintiffs' Claims." Docket No. 17. Defendant has submitted a supporting Memorandum (Docket No. 18) and the Declaration of one of its counsel (Docket No. 19). Plaintiffs have submitted a Response in Opposition to the Motion (Docket No. 21) and the Declaration of one of its counsel (Docket No. 22). With leave of Court, Defendant has filed a Reply. Docket Nos. 26, 28, 29.

Judge Campbell has previously referred this action to the undersigned for, in part, "decision on all pretrial, non-dispositive motions; and a report and recommendation on any dispositive motions." Docket No. 4.

According to the Complaint, this action is brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et se*q., ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").  Plaintiffs' Complaint states in part: "This is an action to collect a sum of withdrawal liability and delinquent contributions that the Defendant owes to Plaintiff PACE Industry Union-Management Pension Fund [hereinafter referred to as "PIUMPF," "Plaintiffs," or the "Pension Fund"]."  Docket No. 1, p. 1.  The Pension Fund avers that it is a Trust Fund established and maintained pursuant to 29 U.S.C. §186(c)(5), part of the Labor Management Relations Act of 1947, as amended.  The Pension Fund avers that it is a multi-employer Employee Benefit Plan within the meaning of 29 U.S.C. §§ 1002(2) and (3), and is maintained for the purpose of providing pension and related benefits to eligible participants.  The Pension Fund avers that it is also a multi-employer Pension Plan within the meaning of 29 U.S.C. §1002(37).

Plaintiffs aver upon information and belief that Defendant O. E. Clark Paper Box Co. ("Clark") at all relevant times was an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 1002(5), (11), and (12).  Until on or about June 27, 2008, Clark was a participating employer in the Pension Fund and was obligated to make contributions to fund benefits for employees covered by the Pension Fund.  On or about June 27, 2008, Clark "completely withdrew" from participation in the Pension Fund within the meaning of 29 U.S.C. §1383.

The Pension Fund avers that, as a result of that withdrawal, Clark is obligated to pay withdrawal liability to the Pension Fund, as required by 29 U.S.C. §1381(a).  Plaintiffs state that they made a determination of the amount of Clark's withdrawal liability in compliance with all

applicable statutory requirements and the rules of the Pension Fund. Thereafter, Plaintiffs timely notified Clark of the determination and made a demand to Clark for payment in a letter dated February 24, 2009. That letter estimated the amount of withdrawal liability to be $1,483,622.00 and set forth a schedule of estimated monthly payments of $5,580.34 for 240 months (20 years). The first payment was due May 1, 2009.

By a letter dated May 22, 2009, Clark filed a request for review of the Pension Fund's withdrawal liability determination pursuant to 29 U.S.C. §1399(b).

The parties agree that, by a letter dated November 18, 2009, Clark initiated arbitration pursuant to 29 U.S.C. § 1401.

Plaintiffs aver that the parties entered into a series of unsuccessful negotiations in the interest of settling the dispute, but did not take any further actions with regard to the arbitration of the withdrawal liability dispute. Clark made the monthly withdrawal installment payments to the Pension Fund for 39 months, from May 2009 through July 2012, a total of $217,633.26.

According to the Complaint, Clark did not pay the monthly installment payments due August 1, 2012, and September 1, 2012, and Plaintiff avers that Clark was in default of its withdrawal liability obligation to the Pension Fund. The Fund formally notified Clark, by a letter dated September 12, 2012, that if the monthly installment payments were not paid within 60 days after receipt of the September 12, 2012, letter, the Pension Fund would take legal action to collect the entire withdrawal liability, plus interest, liquidated damages, and attorneys' fees, as provided for in 29 U.S.C. §§ 1132(g) and 1135.

On November 12, 2012, Clark's counsel sent a letter to Plaintiffs which noted in part that Clark had previously created an escrow and deposited funds to pay certain amounts to Plaintiffs

pending resolution of the disputed issues, but that Clark had terminated the escrow earlier in 2012.

Approximately 14 months later, the Pension Fund informed Clark for a second time of its default and notified Clark of its failure to cure its default within 60 days, as set forth in the September 12, 2012, letter. The Pension Fund also notified Clark at that time that, "because of its defaults, the entire balance of the withdrawal liability assessment in the amount of $1,483,622 was due and owing."

The Pension Fund filed the instant action on February 23, 2015, arguing that Clark is required to make immediate payment for the full amount of the withdrawal liability due and owing, within the meaning of 29 U.S.C. §1399(c)(5). Additionally, the Pension Fund averred that Clark is obligated to pay liquidated damages in an amount equal to the greater of the interest on the withdrawal liability or 20 percent of the total withdrawal liability.

The following background information may be helpful to an understanding of the issues involved in this action. In *Central States Pension Fund v. O'Neill Bros.,* 620 F.2d 766, 767-68 (7th Cir. 2010), the Court described the relevant "statutory scheme" as follows:

> A multiemployer pension plan is created when various employers agree to make contributions to a common pension fund on behalf of their respective employees. Congress has recognized that the reliability of multiemployer pension funds is of extreme importance to the workers who rely upon them and of vital importance to the economic and social well-being of the Nation. To achieve and maintain the requisite level of financial security, multiemployer pension plans must maintain adequate funding levels to ensure their capacity to fund the benefits of workers who have a legitimate expectation that those funds will be available to meet their needs. The Multiemployer Pension Plan Amendments Act . . . , an amendment to ERISA, therefore requires that an employer pay "withdrawal liability" if it withdraws from a

> multiemployer pension fund. The Act provides a mechanism for calculating the amount of withdrawal liability and the schedule according to which it should be paid. *See* 29 U.S.C. §§ 1391, 1399(c)(1), (3). The mechanism calculates the amount of liability to equal the employer's proportionate share of the plan's unfunded vested benefits; the amount of each annual payment is roughly equal to the withdrawing employer's typical past contributions . . . . Congress conceived a withdrawal liability as a substitute for the annual payments that an employer would have made had it not withdrawn. . . . The statutory mechanism seeks to maintain the level of funding for the plan, despite the employer's withdrawal . . . .
>
> The Act provides that, in addition to calculating withdrawal liability, the pension plan also must calculate an installment schedule in accordance with 29 U.S.C. § 1399(c). The employer may seek review of these calculations and then challenge the plan's determination in arbitration, but it must pay even while the review and arbitration are pending. 29 U.S.C. §§ 1399(c)(2), 1401(b). Thus payment is placed ahead of decision . . . . Of course, if the employer eventually prevails in its challenge, overpayments are returned to it.
>
> To further ensure the financial stability of the plan, the statute specifically provides that, in the event of a default, the pension plan may demand immediate payment of the outstanding amount of withdrawal liability. *Id.,* § 1399(c)(5).
>
> The statute provides two definitions of default:
>
>> (A) the failure of an employer to make, *when due*, any payment under this section, if the failure is not cured within 60 days after the employer received written notification from the planned sponsor of such failure, and
>>
>> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

(Citations and footnote omitted, emphasis added.)

The Sixth Circuit has also set forth "three principles" of the MPPAA: (1) an employer withdrawing from a fund must make withdrawal liability payments; (2) even if an employer disputes the withdrawal liability payments, the employer must make payments to the fund no later than 60 days after the fund demands such payments, and must continue to make them until the dispute has been resolved; and (3) disputes over withdrawal liability between an employer and a fund must be arbitrated. *Findlay Truck Line, Inc., v. Central States, Southeast & Southwest Areas Pension Fund,* 726 F.3d 738, 741-42 (6th Cir. 2013).

It should also be noted that ERISA created a wholly-owned government corporation known as the Pension Benefit Guarantee Corporation ("PBGC"), which is charged with the administration of the withdrawal liability provisions of the MPPAA. *See Findlay Truck Line, supra,* 726 F.3d at 740; *O'Neill Bros., supra,* 620 F.3d at 774. As the PBGC itself has stated, "Opinion letters [issued by PBGC] are based on the PBGC's review of the proper interpretation of the statute, a view that, according to judicial authorities, is entitled to great deference." PBGC Opinion Letter, August 19, 1986, 1986 WL 38797, citing in part *Concord Control, Inc., v. International Union*, UAW, 647 F.2d 701, 704 (6th Cir. 1981).

On April 20, 2015, Defendant filed the instant Motion (Docket No. 17), which raises two main issues. First, Clark argues that the Court should compel the parties to arbitrate. Second, Clark argues that the Court should dismiss, or in the alternative stay, Plaintiffs' claims, pending the arbitration. Plaintiffs respond arguing that Clark waived its right to arbitrate by failing to pursue arbitration for a period of over 5 years; and even if Clark did not waive its right to arbitrate, the Court should not stay Plaintiffs' lawsuit because Clark is not pursuing arbitration in good faith and, alternatively, because Clark has no defense to the immediate payment of the

installment payments. The Court will discuss these issues in order below.

In its supporting Memorandum, Clark states that it initiated arbitration concerning four issues:

> 1. <u>Limitations on withdrawal liability under 29 U.S.C. § 1405; ERISA § 4225</u>. Clark disputes PIUMPF's determination of withdrawal liability insofar as it does not reflect a reduction of Clark's withdrawal liability afforded by 29 U.S.C. § 1405; ERISA § 4225 because Clark sold its assets in an arms-length transaction with an unrelated party.
>
> 2. <u>Calculation of withdrawal liability</u>. Clark disputes PIUMPF's calculation of Clark's withdrawal liability in general.
>
> 3. <u>Calculation and allocation of liability for vested benefits to withdrawn employers</u>. Clark disputes PIUMPF's determination of withdrawal liability because it fails to calculate the share of vested benefits attributable to withdrawn employers and allocate those vested benefits accordingly.
>
> 4. <u>All questions and issues raised in Clark's May 22, 2009 letter (Ex. A to Farrell Decl.) and incorporated by reference herein</u>.

Docket No. 18, p. 2.

Clark argues that 29 U.S.C. § 1401 "requires disputes concerning the amount of or existence of withdrawal liability to be resolved through arbitration." Docket No. 18, p. 3. Clark quotes the Sixth Circuit for the proposition that, "'arbitration reigns supreme' for withdrawal liability disputes." *Id.*, citing *Findlay Truck Line, Inc., v. Cent. States, Southeast & Southwest Areas Pension Fund*, 726 F.3d 738, 755 (6th Cir. 2013) (citations omitted). Clark points out that Plaintiffs have conceded that Clark initiated the arbitration. Clark further argues that the Pension Fund waived its right to object to any deficiencies in the notice of arbitration because it failed to object promptly in writing to those deficiencies. *Id.*, citing 29 C.F.R. § 4221.3(e). Therefore, Clark argues, arbitration should be conducted and completed to determine the amount of any

7

withdrawal liability.

In response, Plaintiffs argue that Clark has waived any right to arbitration by failing to take any action on its arbitration demand for five and-a-half years. The Pension Fund argues that Courts regularly hold that an employer has waived its right to arbitrate where the employer fails to complete "the required procedural steps." Plaintiffs rely upon two cases for this proposition: *Robbins v. B &B Lines, Inc.,* 830 F.2d 648,650-51 (7th Cir. 1987) and *PACE Industry Union-Management Pension Fund v. Troy Rubber Engraving Co.,* 805 F. Supp. 2d 451, 463 (M.D. Tenn. 2011). Both of those cases address whether the party timely initiated arbitration, not whether the passage of time after the arbitration was initiated waived arbitration. Neither of those cases adopts the proposition that, once an employer has initiated arbitration, it may waive its right to arbitration by failing to "press its claims . . . by seeking the appointment of an arbitrator." *Id*., p. 9.

The Pension Fund recognizes that, "ERISA requires that employers who wish to challenge a withdrawal liability assessment must do so through a mandatory system of arbitration." Docket No. 21, p. 7. Regulations promulgated by the PBGC govern the arbitration of withdrawal liability disputes. Section 4221.4 provides that "[t]he parties shall select the arbitrator within 45 days after the arbitration is initiated, or within such other period as is mutually agreed after the initiation of arbitration, and shall mail to the designated arbitrator a notice of his or her appointment." *Id*., p. 7. That Section also provides that, "[i]f the parties fail to select an arbitrator within the time prescribed by this section, either party or both may seek the designation and appointment of an arbitrator in a United States district court pursuant to the provisions of title 9 of the United States Code." *Id.*

8

Thus, Clark has not waived its right to arbitrate.

Clark next argues that the instant action should be dismissed or stayed pending the arbitration. Clark concedes that, once arbitration has been initiated, the withdrawing party can be required to make interim installment payments toward the withdrawal liability, and "upon an appropriate showing," the Court can order such payments to be made. Docket No. 18, p. 3-4, *citing* 726 F.3d at 755. Clark argues that after an arbitration has been initiated, however, the Pension Fund cannot declare a default and seek to collect the entire amount of the withdrawal liability it assessed until the sixty-first day *after the arbitration is concluded*. *Id*., p. 4, *citing Cent. States Southeast & Southwest Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 773 (7th Cir. 2010) (emphasis added). *See* 29 C.F.R. § 4219.31(c).[1]

Clark's argument here relies upon 29 U.S.C. § 1399(c)(5), which addresses "defaults," and which provides:

> (5) In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For

---

[1] The referenced section provides in relevant part:

> The following rule shall apply with respect to the obligation to make withdrawal liability payments during the period for plan review and arbitration and with respect to the failure to make such payments:
>
> > (i) A default as a result of failure to make any payments shall not occur until the 61st day after . . .
> >
> > . . .
> >
> > (iii) If arbitration is timely initiated either by the plan, the employer or both, issuance of the arbitrator's decision.

9

purposes of this section, the term "default" means –

> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the planned sponsor of such failure, and
>
> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

The Court in *O'Neill Bros.*, stated in relevant part:

> The MPPAA ordinarily provides for an employer to pay its withdrawal liability according to a schedule, calculated by the pension fund in accordance with the statutory formula. 29 U.S.C. § 1399(c)(2). A default, however, has special consequences. As noted earlier, the MPPAA provides for two kinds of default and states the consequences of either kind.
>
> . . .
>
> Subsection 1399(c)(5) states that "A plan sponsor may require immediate payment" in the event of default; Central States made such a demand. We therefore must resolve whether the default provisions of § 1399(c)(5) applied during the pendency of the arbitration proceeding.
>
> . . .
>
> We pause, first of all, to note the structure of the provisions. They consist of a general paragraph, which we shall refer to as the "main body" of the section, and two alternative definitions of default. There is nothing in the text of the main body of the provision, or in subsection (B), suggesting any kind of limitation on when acceleration can occur. In these parts of the text, there is no indication that default payments should be treated differently from any other withdrawal payments, which must be made before the decision on liability is made. These provisions, then, echo the general rule of "pay now, dispute later," and in no way indicate that acceleration due to default is an exception to this general rule.
>
> The PBGC has given a different interpretation to subsection (A),

> which deals with default due to non-payment. Addressing directly the matter in 29 C.F.R. § 4219.31(c), the PBGC's regulation provides that "[a] default *as a result of failure to make any payments* shall not occur" until 61 days after the arbitrator rules . . . This regulation, then, interprets the statutory command of section 1399(c)(5)(A) as requiring a method of proceeding different from the "pay not, dispute later" approach of the remainder of the statute. The PBGC reaches this conclusion by focusing on the distinctive wording of subsection (A), the statute's definition of a missed-payment default. More precisely, it focuses on the words "when due." It then points out that section 1401(b)(1) provides that "[i]f no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amount demanded by the planned sponsor . . . shall be *due* and owing on the schedule set forth by the planned sponsor." 29 U.S.C. § 1401(b) (emphasis supplied [by *O'Neill Bros*. Court]). In its view, "due" is a technical term employed by the Act. Payments become "due" when they become final, either because arbitration has not been initiated or has concluded. Payments not "due" are interim payments. Rather, interim payments shall be made as specified by section 1401(b), but cannot serve as the basis for a missed-payment default. By definition, a missed-payment default cannot occur until payments become "due."

620 F.3d at 770-73.

The case at bar involves a non-payment default, in which the employer has initiated arbitration. Under those circumstances, the Pension Fund cannot declare a default and seek to collect the entire amount of the withdrawal liability it has assessed, because the arbitration is not yet concluded. Thus, this action should not be stayed or dismissed insofar as the entire amount of the withdrawal liability is concerned, because that is a matter for arbitration.

The Pension Fund further argues that, even if Clark did not waive its right to arbitrate, this Court should not stay this action. In making this argument, the Pension Fund argues that Clark is not entitled to the "general rule" against total default during the pendency of an arbitration, because Clark is not pursuing arbitration in good faith. This argument is based not on

the language of the statute, but upon an "Opinion Letter" issued by the PBGC. PBGC Opinion Letter, 82-27, October 12, 1982. That Opinion Letter addresses an inquiry as to "whether, under the Multiemployer Pension Plan Amendments Act of 1980 . . . , 'acceleration of future installments' of withdrawal liability can occur if any installment is not paid before completion of the administrative process through arbitration." *Id*. The Letter states in relevant part:

> Pending the resolution of the dispute, the employer is required to pay withdrawal liability as originally determined by the plan, but the failure to pay an installment before the arbitration is concluded would not accelerate the payment of future installments.
> . . .
> In sum, assuming an employer pursues its statutory right to arbitration in good faith, the employer is not subject to a demand for immediate payment of the entire amount of withdrawal liability, for failure to make withdrawal liability payments during both the period before arbitration is requested and the period between the request for arbitration and the arbitrator's final decision.

*Id.*

Plaintiffs argue that the referenced Opinion Letter requires an employer to pursue its right to arbitration "in good faith." But there is no indication that the Opinion Letter addressed a situation involving good faith or bad faith. The Opinion Letter does not create a requirement of good faith. Even if it did, however, there is no indication that Clark has been guilty of something less than good faith. The most Plaintiffs can point to are the facts that more than 5 years passed with no effort by Clark to pursue the arbitration proceeding; that Clark failed to make its required interim payments for nearly 3 years; and that Clark established an escrow account and later terminated it. Plaintiffs cite no authority for the proposition that any of these actions amount to something less than good faith. Moreover, Plaintiffs made no effort to pursue the arbitration

12

proceeding; Clark did make monthly installment payments to the Pension Fund for 39 months, totaling $217,663.26; and Clark's establishment and later termination of an escrow account, in and of itself, did not cause any damage to Plaintiffs.

Finally, Plaintiffs argue that, even if the Court disagrees with its position that Clark has "so abused the arbitration process as to lose the benefits thereof," the Court should still decline to stay the Pension Fund's suit. Docket No. 21, p. 12-13. Plaintiffs argue that, regardless of whether Clark has a live arbitration proceeding with the Pension Fund, the Pension Fund still has an actionable claim against Clark for the monthly installment payments that Clark has missed since August 2012.

Clark attempts to sidestep this issue, arguing that Plaintiffs have sought only to collect the entire withdrawal liabilities assessment, and not any missed interim installment payments. Plaintiffs disagree, and argue that they have indeed sought payment of the past statutorily-mandated installment payments. As discussed above, it is apparent from the first sentence of Plaintiffs' Complaint that Plaintiffs seek to collect "a sum of withdrawal liability *and delinquent contributions that the Defendant owes to Plaintiffs . . . .*" Docket No. 1, p. 1.

In view of the "dispute now, pay later" scheme of the MPPAA, and the Sixth Circuit's decision in *Findlay Truck Line, Inc.,* the Court sees no reason why Plaintiffs cannot pursue, in the instant action, their claim for missed interim payments, even though the arbitration is pending.

For the foregoing reasons, the undersigned recommends that the instant Motion (Docket No. 17) be GRANTED IN PART and DENIED IN PART. To the extent that Defendant seeks to compel arbitration with regard to the total withdrawal liability assessment, the Motion should be

13

GRANTED. To the extent that Defendant seeks to dismiss Plaintiffs' claims in the instant action, the Motion should be DENIED. To the extent that the Motion seeks a stay of Plaintiffs' claims, it should be GRANTED with regard to the total withdrawal liability assessment, but DENIED with regard to the interim payments issue.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge