IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PACE INDUSTRY UNION )
MANAGEMENT PENSION FUND, )
et al., )
    PLAINTIFFS ) NO. 3-15-0163
 ) JUDGE TRAUGER
v. )
 )
O.E. CLARK PAPER BOX CO., )
    DEFENDANT )

**MEMORANDUM OPINION**

Pending before the court is Plaintiffs' Motion for Partial Summary Judgment on Default Interest and Liquidated Damages (Docket No. 50). Plaintiffs' Motion was filed pursuant to this court's prior Memorandum (Docket No. 46), in which the court granted Plaintiffs' Motion for Judgment on the Pleadings as to Plaintiffs' entitlement to outstanding withdrawal payments from Defendant but denied, without prejudice, Plaintiffs' Motion as to the applicable interest rate and the calculation of liquidated damages. The court found that it could not determine, without additional facts, whether Plaintiffs' 12% interest rate on outstanding withdrawal payments reasonably reflects prevailing market rates for comparable obligations, as required by the Employee Retirement Income Security Act ("ERISA"). The court ordered Plaintiffs to file a properly supported Motion for Partial Summary Judgment on the issue of the applicable interest rate.

STATUTES AND REGULATIONS

To reiterate the court's prior findings, in order to enforce the statutory obligation of an employer to make contributions to a multi-employer plan, ERISA provides that, if judgment is

awarded in favor of the plan, the court shall award, in addition to attorney's fees and costs, the following:

(1) the unpaid contributions,

(2) interest on the unpaid contributions, and

(3) an amount equal to the greater of interest on the unpaid contributions or liquidated damages in an amount not in excess of 20 percent of the amount of the unpaid contributions.

29 U.S.C. § 1132(g).

In determining what rate should apply, an ERISA fund may choose between the rate specified in 29 C.F.R. § 4219.32, which sets out a rate that is essentially equivalent to the prevailing market rate for a short-term commercial loan, *or* a rate specified by the plan itself pursuant to 29 C.F.R. § 4219.33, which allows ERISA funds to adopt reasonable rules setting out interest rates that will apply to overdue withdrawal liability:

> Plans may adopt rules relating to overdue and defaulted withdrawal liability, provided that those rules are consistent with ERISA. These rules may include, but are not limited to, rules for determining the rate of interest to be charged on overdue, defaulted and overpaid withdrawal liability **(provided that the rate reflects prevailing market rates for comparable obligations)**. . . . Plan rules adopted under this section shall be reasonable.

29 C.F.R. § 4219.33 (emphasis added). Thus, plans may adopt rules that provide for interest on overdue withdrawal liability at rates other than those set out in the regulations, but these alternative rates must reflect "prevailing market rates for comparable obligations."

## DISCUSSION

Plaintiffs have submitted evidence that the 12% rate is consistent with rates currently charged in the market for overdue short-term and unsecured obligations and within the range

2

charged by other multi-employer ERISA plans for unpaid contributions and withdrawal liability. For example, Plaintiffs offer the Declaration of Trevor England, Chief Executive Officer of the Fund for more than ten years. Docket No. 58. England states that the facts in his Declaration are based on his personal knowledge and his review of the records of the Fund. He further states that he is familiar with the proceedings of the Board of Trustees and attends its meetings. Id. England states that the Board of Trustees, in setting the 12% interest rate,[1] considered the interest rates charged by various businesses for past due accounts and drew on their knowledge of the interest rates employers face if they are late paying invoices and the interest rates charged by employers in the industry to customers who are delinquent in paying their obligations. Id.

Plaintiffs have also presented the Declaration of Kathleen Keller, in which she states that she researched the average interest rates charged by commercial banks for their credit cards and found them, generally, to be between 11% and 14%. Docket No. 51-1. Keller also states that the average purchase interest rate for business credit cards in 2017 is 15.37%, and the average penalty rate for creditors who fail to make on-time payments range from 27% to 29%. Id. Finally, Plaintiffs have presented evidence of federal cases in which the multi-employer funds charged, and courts either approved or did not challenge,[2] interest rates of 10% to 24% for delinquent contributions and withdrawal liability. *See* Docket No. 51 at 12-13. For example, in *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. - Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288

---

[1] Until November of 2012, the interest rate on overdue withdrawal liability payments due to Plaintiffs was set at the prime rate in effect at Chemical Bank on the date of delinquency. Thereafter, the Board of Trustees changed the interest rate to 12%.

[2] Defendant argues that the cases cited by Plaintiffs do not address whether the rate is reasonable but simply recite that it is the rate in the plan. There is no dispute, however, that the courts all enforced these rates.

(3d Circuit 2004), the court, addressing a 10% interest rate for overdue withdrawal payments, said: "We see no basis for questioning that determination."[3]

Defendant contends that Plaintiffs have offered no competent evidence that the 12% rate "reflects prevailing market rates for comparable obligations." Defendant argues that there is no evidence that the Board of Trustees considered any relevant information in setting the 12% rate. The court knows of no regulation that establishes procedures by which an interest rate is to be determined and no requirement that the Board of Trustees consider any particular information so long as the rate "reflects prevailing market rates for comparable obligations."[4]

Defendant also asserts that England's Declaration does not establish how he knows the facts therein. To the contrary, England states that the facts in his Declaration are based on his personal knowledge as CEO of the Fund and upon his review of the Fund's records. England also states that, as CEO, he is familiar with participating employers' withdrawal liability obligations and familiar with the proceedings of the Board of Trustees. He specifically states that he attends the meetings of the Board. He asserts that, at the time it set the 12% interest rate, the Board considered interest rates charged by various businesses for past due accounts and rates charged by employers to customers who are delinquent in paying their accounts. Again, the court knows of no requirement that the

---

[3] Defendant also claims that Plaintiffs' references to IRS interest rates are incorrect. Plaintiffs have conceded their errors, and the court has not considered IRS interest rates in making this determination.

[4] Defendant does not suggest or present evidence of what alternative rate should apply. Neither does Defendant dispute the factual assertions of what rates apply in the situations cited by Plaintiffs or explain why it believes, if it does, that Plaintiffs' comparisons are not comparable.

4

Board consider specific or even *any* information, so long as the rate "reflects prevailing market rates for comparable obligations."

Defendant has offered no evidence that the 12% interest rate does *not* reflect prevailing market rates for comparable obligations, other than citing to the alternative way pension funds may determine interest rates. As noted above, in determining what rate should apply, an ERISA fund may choose between (1) the rate specified in 29 C.F.R. § 4219.32, which sets out a rate that is essentially equivalent to the prevailing market rate for a short-term commercial loan, or (2) a rate specified by the plan itself pursuant to 29 C.F.R. § 4219.33. Defendant has offered evidence that the rates under the first alternative (Pension Benefit Guarantee Corporation's overdue or defaulted withdrawal liability interest rates for 2012 through 2017) range from 3.25% to 4.25%. Plaintiffs were not required to adopt the 29 C.F.R. § 4219.32 rates, however. They were entitled to set their own rate through the alternative method found in 29 C.F.R. § 4219.33.

The court finds that Plaintiffs have sufficiently supported their claim to 12% interest on Defendant's withdrawal liability payments. Accordingly, judgment shall be entered for Plaintiffs based upon 12% interest on the withdrawal liability payments.

In addition, as indicated above, liquidated damages are calculated as an amount equal to the greater of interest on the unpaid contributions or liquidated damages in an amount not in excess of 20 percent of the amount of the unpaid contributions. 29 U.S.C. § 1132(g). Accordingly, judgment will be entered for Plaintiffs against Defendant for liquidated damages in an amount equal to the interest on the unpaid withdrawal payments.

Plaintiffs shall submit a Proposed Order with an updated accounting of the interest and liquidated damages, consistent with this ruling.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE